UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK PADRO, | |
|     Plaintiff, | Civil Action No. 15-7096 (MAS)(DEA) |
| v. | **MEMORANDUM ORDER** |
| AHMAR SHAKIR, *et al.,* | |
|     Defendants. | |

ARPERT, Magistrate Judge.

This matter comes before the Court on the following two motions by *pro se* Plaintiff, Frank Padro: (1) motion for the appointment of pro bono counsel [ECF No. 7]; and (2) motion for an extension of time to file an affidavit of merit [ECF No. 23]. Plaintiff, a prisoner at New Jersey State Prison, brings this action against certain medical personnel who provided medical care to Plaintiff during his incarceration. Plaintiff complains of violations of his civil rights and also asserts various state law claims, including medical malpractice. For the reasons below, Plaintiff's motion for the appointment of counsel is granted, and his motion for an extension of time to serve an affidavit of merit is denied as moot.

**I. Background[1]**

According to the Amended Complaint, in June 2014, Plaintiff slipped and fell while showering at New Jersey State Prison, injuring his previously-injured right knee. Plaintiff sought medical attention and was seen by Defendant Sumicad, a nurse practitioner. She prescribed medication for pain and referred Plaintiff to Defendant Shakir, a medical doctor.

---

[1] The facts herein are taken from Plaintiff's Amended Complaint and do not represent any factual findings on the part of the Court.

After an MRI was performed, Dr. Shakir diagnosed a meniscus tear and recommended surgery to repair Plaintiff's knee.

On December 3, 2014, Dr. Shakir performed the surgery. Plaintiff claims that prior to the surgery, Plaintiff gave consent for surgery to "correct the medical meniscus tear" in his right knee. However, Plaintiff claims that after he was placed under anesthesia Dr. Shakir performed a "right knee arthroscopy, partial medial meniscetomy, micro-fracture, medial femoral condyle, abrasion chondroplasty, and medial plateau," procedures to which, Plaintiff alleges, he did not consent. ECF No. 8 at 5.

Approximately 10 days after he was discharged from the hospital, Plaintiff was taken to the prison's medical clinic complaining of chill, sweating and pain. He was given an antibiotic. On December 18, 2014, Plaintiff saw Dr. Shakir and told the doctor that his knee was infected. Dr. Shakir attempted to drain fluid from Plaintiff's knee, but the doctor was only able to drain a minimal amount of fluid. Plaintiff was given a cortisone injection and sent back to his cellblock.

On January 2, 2015, Plaintiff was seen by Dr. Miller at St. Francis Medical Center. Plaintiff complained of a great deal of pain and swelling. Dr. Miller gave Plaintiff a cortisone injection and he was returned to the prison.

A few days later, Plaintiff was seen by Sumicad complaining of pain and swelling. Sumicad advised Plaintiff that his leg was not infected but, rather, Plaintiff was suffering from a "lack of movement." ECF No. 8 at 6.

On January 6, 2014, Plaintiff started physical therapy. Plaintiff complained to the physical therapist, Defendant Peregmon, that he was in pain and he believed his knee was infected. Peregmon stated that Plaintiff's knee was not infected and painfully "manipulated" Plaintiff's knee over the course of the next month. *Id.*

2

Thereafter, Plaintiff continued to seek medical treatment for pain and swelling and was seen three times by Defendant Sumicad. On February 26, 2015, Plaintiff saw Dr. Shakir, who attempted again to drain Plaintiff's knee. Dr. Shakir then requested that Plaintiff be sent to St. Francis Medical Center for further treatment.

On February 27, 2015, Plaintiff was taken by ambulance to St. Francis Medical Center, where Dr. Miller performed surgery to clear an infection from Plaintiff's knee. Afterwards Plaintiff was bedridden for approximately 5 weeks in the prison infirmary. Plaintiff claims that as a result of the infection his "arthritic condition" was exacerbated to the point where he has not been able to walk since the surgery, and his range of motion is limited. Plaintiff was discharged from the infirmary on April 2, 2015. Plaintiff has continued to seek medical treatment for pain, swelling, and an inability to stand/walk on his right knee.

## II. Analysis

Appointment of Counsel

While there is no right to counsel in a civil case, *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997); *Tabron v. Grace*, 6 F.3d 147, 153-54 (3d Cir. 1993), pursuant to 28 U.S.C. §1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." Appointment of counsel under 28 U.S.C. § 1915(e)(1) may be made at any point in the litigation and may be made by the Court *sua sponte*. See *Tabron*, 6 F.3d at 156.

When deciding whether to appoint counsel under §1915, the Court must be persuaded that Plaintiff's claim has some merit in law and fact. See *Tabron*, 6 F.3d at 155. If the Court finds Plaintiff's claim has merit, the Court must then weigh a variety of factors to decide whether it is appropriate to appoint counsel: (1) the applicant's ability to present his or her case; (2) the complexity of the legal issues presented; (3) the degree to which factual investigation is required and the ability of the applicant to pursue such investigation; (4) whether credibility

determinations will play a significant role in the resolution of the applicant's claims' (5) whether the case will require testimony from expert witnesses; and (6) whether the applicant can afford counsel on his or her own behalf. *Parham*, 126 F.3d at 457-58; *Tabron*, 6 F.3d at 155-157. Other factors such as "the lack of funding to pay appointed counsel, the limited supply of competent lawyers willing to do pro bono work, and the value of lawyers' time" must also be considered when deciding an application for the appointment of pro bono counsel. *Jenkins v. D'Amico*, Civ. Action No. 06-2027, 2006 WL 2465414, at *1 (D.N.J. Aug. 22, 2006) (citing *Tabron*, 6 F.3d at 157-58).

In the instant case, the starting point is whether Plaintiff's claim has some merit in fact and law. Although this case is in its earliest stages, Judge Shipp has found that Plaintiff's case has at least threshold merit; Judge Shipp permitted the Complaint to proceed after screening it pursuant to 28 U.S.C. §§ 1915(e)(2)(B). *See* ECF No. 3 (Order permitting "Plaintiff's entire complaint to proceed past [§ 1915] screening"). Consequently, it is appropriate for the Court to evaluate the *Tabron* factors to determine whether counsel should be appointed.

Turning to the first *Tabron* factor, *i.e.*, Plaintiff's ability to present his own case, the Court notes that Plaintiff has, thus far, demonstrated that he has sufficient abilities to represent himself. However, Plaintiff contends that he relies on the assistance of another prisoner who is being transferred and will be soon unavailable to help Plaintiff. Furthermore, one Defendant, Dr. Miller, has recently filed an Answer. Therefore, the clock has begun to run on the time for Plaintiff to secure an affidavit of merit to proceed with medical malpractice claims.[2] *See* N.J.S.A. 2A:53A-27 (requires a plaintiff to secure an affidavit of merit within sixty days of the filing of an answer to a complaint by a defendant). Without the assistance of counsel, securing

---

[2] Pursuant to N.J. Stat. 2A:53A-27, a plaintiff must secure an affidavit of merit within sixty days of the filing of an answer to a complaint by a defendant.

the affidavit of merit while incarcerated could be a difficult undertaking. Thus, this first factor weighs in favor of the appointment of pro bono counsel.

The second factor for consideration is the complexity of the legal issues presented. Appointment of counsel may be appropriate when the legal issues are complex. *See Tabron*, 6 F.3d at 156 ("[W]here the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis.") (quoting *Maclin v. Freake*, 650 F.2d 885, 889 (7th Cir. 1981)). Currently, the issues presented in this case appear relatively straightforward. Therefore, at this time, the second factor weighs against the appointment of counsel.

The third factor, *i.e.*, the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation, weighs slightly in favor of the appointment of counsel. Although courts have held that the fact of incarceration is not an immediate bar to the ability to conduct factual discovery, *Dippolito v. U.S.*, 2015 WL 1104813, at *3 (D.N.J. Mar. 11, 2015), the factual investigation and analysis that will be necessary in this case that may go beyond Plaintiff's abilities while he is incarcerated.

The fourth factor examines whether a case is likely to turn on credibility determinations. "Though most cases turn on credibility determinations, this factor weighs towards appointing counsel if the case is 'solely a swearing contest.'" *Id.* (quoting *Parham*, 126 F.3d at 460). While it is difficult to discern at this early stage the degree to which credibility may be an issue in this case, it does not appear that this case will be "solely a swearing contest." Therefore, the Court finds that the fourth factor weighs against the appointment of counsel.

The fifth factor considers the extent to which expert testimony may be required. Appointed counsel may be warranted where the case will require testimony from expert witnesses. "A medical malpractice case involves complex facts and medical records that even

5

most lawyers struggle to comprehend.  Hence, most of these cases require expert testimony." *Parham*, 126 F.3d at 460.  Consequently, the Court finds the fifth factor weighs in favor of appointing counsel.

The final factor to be considered is the Plaintiff's ability to retain and afford counsel. Plaintiff has been granted leave to proceed *in forma pauperis* in this matter; accordingly, the Court finds this final factor weighs in favor of the appointment of counsel.

In light of the above, the Court finds that on balance the *Tabron* factors weigh in favor of the appointment of pro bono counsel.  Counsel will be able to develop the factual record of this case and potentially secure an affidavit of merit and expert testimony, if warranted.  The Court, therefore, will direct the Clerk to assign pro bono counsel to represent Plaintiff.

Given the process involved for the Clerk to assign pro bono counsel, it may be several weeks or more before counsel enters an appearance on behalf of Plaintiff.  In order to avoid any unintended or unjust consequences due to this delay, the Court will stay these proceedings until counsel is appointed.  The Court has the inherent power to stay proceedings in order to "promote their fair and efficient adjudication," *U.S. v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994), and finds that the fair and efficient adjudication of this matter is best served by staying this matter until counsel is appointed.

Extension of Time to Serve Affidavit of Merit

Plaintiff seeks "to be excused from providing an Affidavit of Merit until this Court rules on [his] Motion for appointment of Pro Bono counsel." ECF No. 23.  Having ruled on Plaintiff's motion for appointment of counsel, the instant motion shall be denied as moot.  Should Plaintiff in the future find that he requires more than the 60 days permitted for obtaining an affidavit of merit, Plaintiff may request an extension by filing the appropriate motion.

### III. Conclusion and Order

For the reasons above, Plaintiff's motion for the appointment of pro bono counsel is granted, and Plaintiff's motion for an extension of time to serve an affidavit of merit is denied. Accordingly,

IT IS on this 3rd day of March 2016

ORDERED that Plaintiff's motion for the appointment of pro bono counsel [ECF No. 7] is GRANTED; and it is further

ORDERED that the Clerk shall appoint pro bono counsel to represent Plaintiff in this matter; and it is further

ORDERED that Plaintiff's motion for an extension of time to file an affidavit of merit [ECF No. 23] is denied as moot and without prejudice to Plaintiff filing a future motion seeking an extension, if necessary, and it is further

ORDERED that this matter is stayed until further Order of the Court.

/s/ Douglas E. Arpert
DOUGLAS E. ARPERT
United States Magistrate Judge