**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FRANK PADRO, | : | Civil Action No. 15-7096 (MAS) (DEA) |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| DR. AHMAR SHAKIR, et al., | : | |
| Defendants. | : | |

**SHIPP, District Judge**

This matter comes before the Court upon three motions to dismiss and/or motions for summary judgment ("Motions") by Defendants Dr. Ahmar Shakir ("Dr. Shakir"), Dr. Scott Miller ("Dr. Miller"), and physical therapist Anne Peregmon ("Ms. Peregmon" or "Peregmon") (collectively, "Defendants").[1] (ECF Nos. 67, 69, 71.) Frank Padro ("Padro" or "Plaintiff") filed oppositions (ECF Nos. 72, 73, 75) and Defendants replied (ECF Nos. 74, 76, 77). For the following reasons, the Court denies Dr. Shakir's and Dr. Miller's Motions and grants in part and denies in part Ms. Peregmon's Motion.

## I.   BACKGROUND

The Court recites the facts in the light most favorable to Plaintiff. In June of 2014, while incarcerated at New Jersey State Prison, Plaintiff slipped and fell while showering, reinjuring his right knee. (Am. Compl. ¶ 8, ECF No. 8.) Plaintiff sought medical attention, and was seen by A.

---

[1] Defendants bring their Motions as both motions to dismiss and, in the alternative, summary judgment motions. In their Motions, however, Defendants reference only facts that were pled in Plaintiff's Amended Complaint, without pointing to any additional discovery. Accordingly, the Court construes the filings as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Sumicad ("Sumicad"), a nurse practitioner, who prescribed Naproxen and referred Plaintiff to a specialist, Dr. Shakir. (*Id.*) After an MRI was performed, Dr. Shakir diagnosed Plaintiff with a meniscus tear and recommended knee surgery. (*Id.*)

On December 4, 2014, Dr. Shakir performed the surgery. (*Id.* ¶ 9.) Plaintiff gave consent for surgery to correct the meniscus tear to his right knee. (*Id.*) Instead, after Plaintiff was under anesthesia, Dr. Shakir performed a "right knee arthroscopy, partial medial meniscetomy, micro-fracture, medial femoral condyle, abrasion chondroplasty, and medial plateau[,]" a procedure to which Plaintiff did not consent. (*Id.*) Following the surgery, Plaintiff was discharged from the hospital without being prescribed any antibiotics to prevent infection. (*Id.* ¶ 10.)

On December 15, 2014, Plaintiff was taken to the prison clinic, complaining of chills, sweating and pain to his right knee. (*Id.* ¶ 11.) Lab work was performed the next day and Plaintiff was sent back to the hospital because of an elevated white blood cell count. (*Id.* ¶ 12.) Plaintiff was given antibiotics. (*Id.*) On December 18, 2014, Plaintiff saw Dr. Shakir and informed Dr. Shakir that his knee was infected, swollen, and he was experiencing a great deal of pain. (*Id.* ¶ 13.) Dr. Shakir denied that the knee was infected, but attempted to drain the fluid in Plaintiff's knee with a ten-inch needle. (*Id.*) Only a minimal amount of fluid was drained because the medical department did not have eighteen-inch needles. (*Id.*) Plaintiff was given a cortisone injection and sent back to his cellblock. (*Id.*)

On January 2, 2015, Plaintiff was seen by Dr. Miller at St. Francis Medical Center, where Plaintiff complained of pain and swelling to his right leg, ankle, feet and toes. (*Id.* ¶ 14.) Dr. Miller denied that Plaintiff's knee was swollen, but gave Plaintiff a cortisone injection. (*Id.*) A few days after returning to prison, Plaintiff was seen by nurse practitioner Sumicad. (*Id.* ¶ 15.) Although Plaintiff complained of serious pain and swelling, and despite obvious swelling to his

"entire leg including his knee, ankle, feet and toes," Sumicad denied that Plaintiff's knee was infected. (*Id.*)

On February 6, 2015, Plaintiff began physical therapy. (*Id.* ¶ 16.) Plaintiff complained to the physical therapist, Ms. Peregmon, that he was in a great deal of pain and his knee was infected. (*Id.*) Peregmon "insisted [P]laintiff's right knee was not infected . . . [and] she continued to manipulate [P]laintiff's right knee for over a month which was sheer torture for [P]laintiff." (*Id.*) Plaintiff states that "[b]ecause [P]laintiff was not progressing[,] the therapist, [Ms.] Peregmon, thought [P]laintiff was malingering." (*Id.*)

Plaintiff continued to seek medical treatment, and was seen by Sumicad on three occasions, who insisted Plaintiff's knee was not infected. (*Id.* ¶ 17.) On February 26, 2015, Plaintiff was seen by Dr. Shakir who expressed surprise that Plaintiff had made no progress. (*Id.* ¶ 18.) Dr. Shakir attempted to drain Plaintiff's knee of fluid, but was unsuccessful because he lacked the proper sized needle. (*Id.*)

On February 27, 2015, Plaintiff was taken to St. Francis Medical Center, where Dr. Miller performed emergency surgery to clear Plaintiff's knee of infection. (*Id.* ¶ 19.) Plaintiff was subsequently bedridden for approximately five weeks in the prison infirmary, experiencing a great deal of pain. (*Id.* ¶ 20.) Plaintiff explains that because of the infection, his arthritic condition has been exacerbated, he has been unable to walk since the surgery, and his range of motion is limited. (*Id.*)

On April 2, 2015, Plaintiff was discharged from the prison infirmary. (*Id.* ¶ 22.) On April 9, 2015, Plaintiff again saw Dr. Shakir, who explained to Plaintiff that the micro-fracture procedure is generally not effective. (*Id.* ¶ 23.) Dr. Shakir only glanced at Plaintiff's knee without looking at X-rays, and told Plaintiff that the knee looked like it was progressing. (*Id.*) On May 5, 2015,

Plaintiff was again seen by Dr. Shakir, who indicated that "if, patient was not walking by now[,] most likely his incapability to walk might be permanent." (*Id.* ¶ 24.) In addition, Dr. Shakir gave Plaintiff a cortisone injection and referred Plaintiff to the infectious disease doctor. (*Id.*) The infectious disease doctor recommended blood work to verify if the infection was clear. (*Id.* ¶ 26.) The blood work was not performed. (*Id.*) Plaintiff continued to see various medical personnel for his pain. (*Id.* ¶¶ 30-33.)

On August 20, 2015, Dr. Miller drained Plaintiff's knee, but failed to test the fluid for infection. (*Id.* ¶ 34.) Dr. Miller asserted that he believed Plaintiff had gout. (*Id.*) Plaintiff continued to file complaints and letters regarding his pain, and continued to seek medical care. (*Id.* ¶¶ 35-46.) When Plaintiff received an MRI on October 21, 2015, the results showed significant damage to Plaintiff's knee. (*Id.* ¶ 47.)

Plaintiff raises four causes of action against Defendants: 1) violation of the Eighth Amendment ("Ground One"); 2) intentional infliction of emotional distress in violation of the New Jersey Tort Claims Act ("Ground Two"); 3) violation of the Eighth Amendment for cruel and unusual punishment ("Ground Three"); and 4) intentional infliction of emotional distress and physical pain ("Ground Four"). (*Id.* ¶¶ 52-55.)

Plaintiff filed his Amended Complaint on December 7, 2015, seeking damages and injunctive relief. (Am. Compl.) In March 2016, Judge Arpert granted Plaintiff's motion for the appointment of *pro bono* counsel. (Order, Mar. 3, 2016, ECF No. 25.) Dr. Miller and Dr. Shakir filed separate summary judgment motions, arguing that Plaintiff never filed an Affidavit of Merit, as required under New Jersey law, on his medical malpractice claims. (Summ. J. Mots., ECF Nos. 54, 59.) The Court granted Dr. Miller's and Dr. Shakir's summary judgment motions only on Ground Two of Plaintiff's complaint, explaining that Ground Two could arguably be construed as

a medical malpractice claim. (*See* Mem. & Order, May 9, 2018, ECF No. 65; Mem. & Order, June 18, 2018, ECF No. 66.) The Court reserved ruling on Plaintiff's Eighth Amendment and intentional torts claims, as Defendants had not specifically raised those claims in their summary judgment motions. (*Id.*) Following the Court's Orders, Defendants filed their respective Motions arguing that Plaintiff's allegations, as pled in the Amended Complaint, amount to mere medical malpractice claims, and fail to rise to the level of an Eighth Amendment deliberate indifference violation.

## II.   LEGAL STANDARD

In resolving a motion to dismiss under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations and citation omitted). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (citation omitted). In addition, *pro se* pleadings are liberally construed. *See Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017) (per curiam).

## III. ANALYSIS

### A. Dr. Shakir

Dr. Shakir alleges that the facts, as pled in the Amended Complaint, amount to mere medical malpractice claims, which fall far short of raising Eighth Amendment claims for inadequate medical care. (Shakir Mot. to Dismiss Br. 8, ECF No. 67.) Specifically, Dr. Shakir argues that Plaintiff's "allegations amount to nothing more than claims concerning failure to diagnose, lack of informed consent and a disagreement over the reasonable treatment to be rendered." (*Id.*) Dr. Shakir further argues that Plaintiff has not asserted that medical treatment was intentionally denied or prevented. (*Id.*) In addition, Dr. Shakir argues that because he is a private citizen who is independently contracted to work with the Department of Corrections, he is given greater latitude to provide care to inmates. (*Id.* at 9.) In response, Plaintiff argues that Dr. Shakir "ignored Plaintiff's complaints, failed to treat his infection due to indifference and lack of care and failed to obtain the medical equipment necessary to treat Plaintiff." (Pl.'s Opp'n Br. to Shakir Mot. to Dismiss 8, ECF No. 73.) In so doing, Plaintiff argues that Dr. Shakir was deliberately indifferent to his medical needs.

As an initial matter, a state law claim for medical malpractice or medical negligence is distinct from a § 1983 claim alleging violations of the Eighth Amendment right to adequate medical care, as the latter requires a greater level of culpability. *See Bramson v. Sulayman*, 251 F. App'x 84, 86 (3d Cir. 2007). Thus, to state a claim for inadequate medical care under the Eighth Amendment, a prisoner must allege both (1) the existence of serious medical needs; and (2) the official's deliberate indifference to those needs. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). In this case, Dr. Shakir does not dispute that Plaintiff suffers from a serious medical need. Instead, his argument rests on the element of deliberate indifference.

Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)). A prison official acts with "deliberate indifference" when "the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference can be found where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. *See Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993) (citing *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir.1987)). In addition, it may exist "where the prison official persists in a particular course of treatment in the face of resultant pain and risk of permanent injury." *Rouse*, 182 F.3d at 197 (internal quotations and citation omitted).

Here, the Court concludes that Plaintiff has stated a claim for deliberate indifference to his serious medical needs against Dr. Shakir for his failure to provide appropriate treatment and follow-up care for Plaintiff's knee injury. Plaintiff alleges that Dr. Shakir performed a surgery that was unconsented to (Am. Compl. ¶ 9), and is a procedure that is generally not effective (*Id.* ¶ 23). Plaintiff also alleges that his knee was visibly swollen and infected, and that he repeatedly informed Dr. Shakir of his considerable pain. (*Id.* ¶¶ 13, 18, 23.) Furthermore, Plaintiff alleges that Dr. Shakir ignored his repeated complaints of pain and infection for nearly four months, rendering Plaintiff bedridden for five weeks and unable to walk. (*Id.* ¶ 20.) Because of Plaintiff's infection, two months after his initial surgery, Plaintiff was rushed to the hospital for an emergency surgery to clear his knee from infection. (*Id.* ¶ 19.) While Dr. Shakir did provide Plaintiff with

7

two cortisone injections, Dr. Shakir performed the injections with an improperly-sized needle. (*Id.* ¶¶ 13, 24.)

The Court acknowledges that the issue of whether Dr. Shakir acted with deliberate indifference in his treatment of Plaintiff's knee injury is a close question. Generally, a court "must 'disavow any attempt to second-guess the propriety or adequacy of [a] particular course of treatment' so long as it 'remains a question of sound professional judgment.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (citing *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)). In this case, however, Dr. Shakir appears to have persisted in a course of treatment that was ineffective at best, and, at worst, significantly harmful, to the point that Plaintiff is now unable to walk. *See Rouse*, 182 F.3d at 197.

Furthermore, Plaintiff's allegation that he received some limited care for his knee— namely, cortisone injections and physical therapy—does not necessarily defeat Plaintiff's Eighth Amendment claim. Deliberate indifference does not require a showing of complete failure to provide care, rather "[w]here prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest." *Lanzaro*, 834 F.2d at 346 (internal quotations and citations omitted). Thus, Plaintiff's allegations, accepted as true, support a finding that Dr. Shakir was deliberately indifferent to Plaintiff's serious medical need.

B.   Dr. Miller

Dr. Miller similarly argues that Plaintiff cannot couch medical malpractice claims as Eighth Amendment claims. (Miller Cross Mot. to Dismiss Br., ECF No. 69-2.) In response, Plaintiff states that he has pled sufficient facts to state a claim of deliberate indifference against Dr. Miller. (Pl.'s Opp'n Br. to Miller Cross Mot. to Dismiss, ECF No. 72.)

While the facts are slightly different, the Court similarly concludes that Plaintiff's allegations, accepted as true, support a finding that Dr. Miller was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff states that he saw Dr. Miller on three occasions over the course of seven months, in January, February and August of 2015. (Am. Compl. ¶¶ 14, 19, 34.) Plaintiff alleges that during those visits, he expressed concern about his infection, swelling, and pain. (*Id.* ¶¶ 14, 34.) Nevertheless, Dr. Miller denied that Plaintiff's knee was infected, and refused to inspect Plaintiff's fluid for infection. (*Id.*) Once again, the Court acknowledges that the issue of whether Dr. Miller acted with deliberate indifference in his treatment of Plaintiff is a close question. For the reasons expressed above, however, the Court declines to dismiss Plaintiff's medical care claims against Dr. Miller.[2]

C. Ms. Peregmon

Ms. Peregmon argues that Plaintiff failed to file an Affidavit of Merit under New Jersey law, and, therefore, Plaintiff's medical malpractice and negligence claims should be dismissed. (Peregmon's Moving Br. 7-9, ECF No. 71-3.) Plaintiff has previously asserted that this case is "not a medical malpractice action," but instead a case involving Eighth Amendment constitutional claims. (*See* Pl.'s Resp. to Miller's Mot. for Summary Judgment 4, ECF No. 62-1). Because of this, Plaintiff has explained that an Affidavit of Merit is unnecessary because he does not seek to raise state law claims. (*Id.*) Based on Plaintiff's own assertions, the Court will grant Ms.

---

[2] In their respective Motions, Defendants Dr. Shakir and Dr. Miller explain that they are not state employees and are not employed by the Department of Corrections, but are, instead, independent consultants contracted by the Department of Corrections. (Shakir Mot. to Dismiss Br. 8; Miller Cross Mot. to Dismiss Br. 9.) To the extent Defendants argue that they are not state actors under § 1983, their claim is unsubstantiated. The Court, accordingly, finds the issue better suited for resolution on summary judgment.

9

Peregmon's motion to dismiss on Plaintiff's medical malpractice and negligence claims, to the extent any of Plaintiff's claims can be construed as such.

Peregmon also argues that "Plaintiff's Amended Complaint fails to allege a serious medical need as to [Ms.] Peregmon[,]" and fails to allege that Peregmon denied or delayed treatment. (Peregmon Mot. to Dismiss Br. 10.) Finally, Peregmon alleges that because she does not have a medical license, as a physical therapist, she could not "address Plaintiff's medical needs beyond providing therapy to him." (*Id.* at 11.) Plaintiff responds that Ms. Peregmon "failed to make recommendations based on [Plaintiff's] legitimate complaints . . . ignored [Plaintiff's] infected knee[,]" and "accuse[d] Plaintiff of faking the injury." (Pl.'s Opp'n Br. to Peregmon Mot. to Dismiss 14, ECF No. 75.)

With respect to the seriousness prong of a medical claim, "[a] medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Lanzaro*, 834 F.2d at 347 (internal quotations and citation omitted). The fact that Peregmon was providing Plaintiff therapy for his knee, indicates his medical need was serious enough to have been diagnosed as needing treatment by a physician. *See Moore v. Sherer*, No. 07-3703, 2007 WL 2572367, at *5 (D.N.J. Sept. 4, 2007) (finding the need for physical therapy to qualify as a serious medical need) (citing *Durmer*, 991 F.2d 67 n.7). Thus, the seriousness prong has been met.

With respect to the element of deliberate indifference, Plaintiff alleges that he complained to Peregmon that he was in pain, and his knee was infected, but she denied that there was an infection, and continued to manipulate his knee for a month despite immense pain. (Am. Compl. ¶ 16.) In addition, he alleges that Peregmon accused Plaintiff of "malingering." (*Id.*) The Court finds these facts, as pled, sufficient to survive a motion to dismiss. As noted *supra*, a defendant

10

can be deliberately indifferent for "persist[ing] in a particular course of treatment in the face of resultant pain and risk of permanent injury." *Rouse*, 182 F.3d at 197 (internal quotations and citation omitted). Here, Plaintiff's physical therapy continued for a month, despite Plaintiff's immense pain, swelling, and likely infection to his knee. Rather than seek additional medical help, Peregmon believed Plaintiff was malingering.

The Court notes that there appears to be no dispute that Plaintiff was provided treatment by all three Defendants. Nevertheless, it also appears that Plaintiff repeatedly complained of extreme pain, swelling, and infection, and his complaints continuously fell on deaf ears. Plaintiff was forced to undergo an emergency surgery, was in the infirmary for over a month, and is now unable to walk. The Court, accordingly, declines to dismiss Plaintiff's Eighth Amendment claims for inadequate medical care.[3]

## IV. CONCLUSION

For the reasons stated above, Dr. Shakir's and Dr. Miller's motions to dismiss are denied. Ms. Peregmon's motion to dismiss/for summary judgment is granted in part and denied in part. An appropriate order follows.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** January 28, 2019

---

[3] Because Defendants have not specifically argued that Plaintiff's claims of intentional infliction of emotional distress should be dismissed, the Court declines to dismiss those claims at this time.

11